# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:15cv73

| | |
|---|---|
| LAURA WARE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM AND** |
| CAROLYN W. COLVIN, ) | **RECOMMENDATION** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability benefits. This case came before the Court on the administrative record and the parties' Motions for Summary Judgment [# 9 & # 13]. The Court **RECOMMENDS** that the District Court **GRANT** the Commissioner's Motion for Summary Judgment [# 13], **DENY** Plaintiff's Motion for Summary Judgment [# 9], and **AFFIRM** the decision of the Commissioner.

## I.  Procedural History

Plaintiff filed an application for disability insurance benefits on August 24, 2011. (Transcript of Administrative Record ("T.") 186.) The application had a

protective filing date of August 17, 2011. (T. 81, 197.) Plaintiff initially alleged an onset date of October 1, 2009 (T. 83, 186, 197), but she subsequently amended her onset date to May 1, 2011 (T. 42, 68, 180).

The Social Security Administration denied Plaintiff's claim. (T. 96-99.) Plaintiff requested reconsideration of the decision, which was also denied. (T. 100-2.) A series of disability hearings were then held before an Administrative Law Judge ("ALJ"). (T. 33-80.) The ALJ then issued a decision finding that Plaintiff was not disabled from May 1, 2011, through the date of the decision. (T. 14-25.) Plaintiff requested review of the ALJ's decision, which was denied by the Appeals Council (T. 1-3). Plaintiff then brought this action seeking review of the Commissioner's decision.

## II. Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); see also Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653

(4th Cir. 2005). Under this inquiry, the Commissioner must consider in sequence: (1) whether a claimant is gainfully employed; (2) whether a claimant has a severe impairment that significantly limits her ability to perform basic work-related functions; (3) whether the claimant's impairment meets or exceeds the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, subpart P; (4) whether the claimant can perform her past relevant work; (5) whether the claimant is able to perform any other work considering her age, education, and residual functional capacity. Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 654 n.1; 20 C.F.R. § 404.1520. If at any stage of the inquiry, the Commissioner determines that the claimant is or is not disabled, the inquiry is halted. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

### III. The ALJ's Decision

In the ALJ's October 24, 2013, decision the ALJ found that Plaintiff has not been disabled under Section 216(i) and 223(d) of the Social Security Act since May 1, 2011. (T. 25.) The ALJ made the following specific findings:

(1) The claimant meets the insured status requirements of the Security Act through December 31, 2014.

(2) The claimant has not engaged in substantial gainful activity since May 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

(3) The claimant had the following severe impairment: disorders of

the back and chronic pain (20 CFR 404.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) which includes frequent postural activities (climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling) and occasional climbing ropes, ladders, and scaffolds. She should avoid concentrated exposure to hazards and would be limited to simple, unskilled work.

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).

(7) The claimant was born on October 3, 1955 and was 55 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant

can perform (20 CFR 404.1569 and 404.1569(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2011, through the date of this decision (20 CFR 404.1520(g)).

(T. 16-35.)

### IV. Standard of Review

Section 405(g) of Title 42 provides that a plaintiff may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review, however, is limited. The Court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id. When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported

by substantial evidence in the record, and whether the ALJ reached the decision based on the correct application of the law. Id.

V. Analysis[1]

A. The Medical Opinion Evidence

In determining whether a claimant is disabled, the ALJ considers any medical opinions in the record together with the other relevant evidence. 20 C.F.R. § 404.1527(b). Medical opinions constitute statements from physicians and psychologists, as well as other acceptable medical sources, reflecting judgments about the nature and severity of the claimant's impairment, including the claimant's symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairment, and the claimant's physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). In evaluating and weighing medical opinions, the ALJ considers: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d, 653 (4th Cir. 2005); see also 20 C.F.R. § 404.1527. The ALJ, however, will give a treating

---

[1] Rather than separately set forth the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

source's opinion "controlling weight" where it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . . ." 20 C.F.R. § 404.1527(c)(2); Mastro, 270 F.3d at 178. As the Fourth Circuit explained in Mastro:

> Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence. See Hunter, 993 F.2d at 35.

270 F.3d at 178.

Statements by medical sources that a patient is disabled, unable to work, or meets the listing requirements are not medical issues, but are administrative findings reserved for the Commissioner. SSR 96-5p, 1996 WL 374183 (Jul. 2, 1996); 20 C.F.R. § 404.1527(d). Because they are administrative findings, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, 1996 WL 374183 (Jul. 2, 1996).

In addition, the ALJ must provide a good reason in the notice of the determination or decision for the weight he or she gives a claimant's treating source opinions. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188 (Jul. 2,

1996). Social Security Ruling 96-2p further provides that:

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

In contrast to the opinion of a treating source, the opinion of a consultative examiner is not entitled to controlling weight. See generally SSR 96-2P, 1996 WL 374188, at *2 (July 2, 1996). A consultative examiner is a nontreating medical source. See 20 C.F.R. § 404.1502. As the pertinent regulation explains:

> Nontreating source means a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you. The term includes an acceptable medical source who is a consultative examiner for us, when the consultative examiner is not your treating source.

20 C.F.R. § 404.1502. Of course, the ALJ may still give "great weight" to the opinion of a nontreating source and, under the right circumstances, may even find that it is entitled to greater weight than that of a treating source. See SSR 96-2P.

Plaintiff's first assignment of error is that the ALJ failed to properly evaluate the medical opinion of Dr. Lara Hume, Plaintiff's treating physician. Specifically, Plaintiff contends that the ALJ erred by assigning little weight to the January 30, 2013, opinion of Dr. Hume. The Commissioner contends that the decision of the ALJ to assign little weight to Dr. Hume's opinion is supported by substantial

evidence in the record.

Dr. Hume provided an opinion dated January 30, 2013. (T. 615-620.) This opinion consist of two parts. First, Plaintiff's attorney submitted a narrative of Plaintiff's alleged symptoms and had Dr. Hume answer a series of yes/no questions. (T. 615-17.) As part of these yes/no questions, Dr. Hume indicated that Plaintiff could not sit for prolonged periods of time of up to two to eight hours during the course of an eight-hour work day, would have to frequently change positions at unpredictable intervals, would have to lie down during the day to relieve pain, could not frequently bend, would need unscheduled breaks during the workday, and would be absent from work more than three times per month. (T. 615-16.)

Dr. Hume also filled out a medical assessment form. (T. 618-20.) On this form, Dr. Hume indicated that Plaintiff could occasionally lift less than ten pounds, could stand and walk for two-three hours during a workday and for only one hour without interruption, could sit for a total of one hour a day and thirty minutes without interruption, could consistently perform in a work-like environment by alternating between sitting and standing for only two to three hours a day, and can occasionally climb, stoop, kneel, balance, crouch, crawl, and bend. (T. 618-19.) Dr. Hume based these opinions on a review of the imaging and patient reports.

-9-

(Id.) In addition, Dr. Hume indicated that Plaintiff had impairments related to reaching, pushing, and pulling due to fears of exacerbating her pain. (T. 620.) Finally, Dr. Hume indicated that Plaintiff had restrictions related to being around moving machinery because of her impairments. (Id.)

The ALJ gave little weight to January 30, 2013, opinion of Dr. Hume that Plaintiff was "limited to less than a full range of sedentary exertion and that her impairments and treatment would likely cause her to miss more than three days a month." (T. 23.) The ALJ further explained:

> Dr. Hume indicated her assessment was based, in part, on "patient report", which the undersigned finds subjective; and imagine studies, which show degenerative changes but not to the degree that would preclude all work. Additionally, Dr. Hume's assessment is inconsistent with her own treatment records showing minimal findings. Moreover, Dr. Hume did not begin treating claimant until May 2012 and did not see the claimant on a regular and ongoing basis, and she did not prescribe more than conservative treatment.

(T. 23.)

Here, the ALJ gave specific reasons for the weight given to Dr. Hume's opinion. This is not a case where the ALJ made conclusory findings that frustrate meaningful review by the Court. Moreover, substantial evidence supports the decision of the ALJ to give little weight to the opinion of Dr. Hume. As the ALJ explained, the opinion of Dr. Hume was largely based on Plaintiff's subjective reports of pain.

The opinion is also inconsistent with Dr. Hume's own treatment notes and findings. Plaintiff first saw Dr. Hume on May 10, 2012, as part of her primary care annual evaluation. (T. 701.) Plaintiff reported her chronic pain and muscle pulls. (T. 701-02.) An examination revealed normal gait and station and no clubbing or cyanosis. (T. 704.) Dr. Hume noted sacral hypertrophy, but that the remainder of the spine was without visible or palpable abnormality. (Id.) Dr. Hume prescribed amitriptyline and directed Plaintiff to follow up in 12-13 months for her annual physical or as needed. (T. 705.) Dr. Hume also directed Plaintiff to exercise 30 minutes a day, but she did not discuss this with Plaintiff during the exam. (T. 704-5.)

It appears from the medical records that Plaintiff did not return to see Dr. Hume until her January 30, 2013, annual evaluation. (T. 685.) Plaintiff reported that her back pain worsened by prolonged sitting, standing, and stooping. (Id.) Plaintiff, however, declined additional interventions for treatment of back pain. (T. 688.) Plaintiff indicated that she preferred rest to around-the-clock analgesics, but that she took Advil for muscle pulls several times a week. (T. 685.) Plaintiff did not take amitriptyline as previously prescribed because it caused vertigo. (T. 686.) Dr. Hume noted that there was no clubbing or cyanosis, the spine was without visible or palpable abnormalities other than the well healed scar from Plaintiff's

prior surgery. (T. 687.) Dr. Hume noted that Plaintiff had limited range of motion on forward spinal flexion but grossly normal spine extension and lateral flexion. (Id.) Plaintiff's neck range of motion was limited mildly in all directions. (Id.) Dr. Hume again directed Plaintiff to exercise 30 minutes a day, but she did not discuss this with Plaintiff during the exam. (T. 688-89.) Finally, Dr. Hume advised Plaintiff to follow up in 12-13 months for her annual physical. (T. 689.) Dr. Hume filled out the questionnaire and medical assessment form that same day. (T. 617, 620.)

The conservative treatment directed by Dr. Hume is not consistent with the severe restrictions and limitations Dr. Hume found in her opinion dated January 30, 2013. This opinion is also inconsistent with her own treatment notes during this time period, which fail to reflect the severity of impairments Dr. Hume indicates in her opinion and questionnaire. Upon a review of the record and the decision of the ALJ, the Court finds that the ALJ's determination that the opinion of Dr. Hume was entitled to little weight was the result of the application of the correct legal standard and is supported by substantial evidence in the record. The Court finds that remand is not required in this case as the result of the ALJ's decision to assign little weight to the opinion of Dr. Hume.

**B. The ALJ's Credibility Determination**

Plaintiff contends that the ALJ failed to properly consider the Plaintiff's statements regarding her pain and symptoms. As an initial matter, the Court recognizes that it is not the role of this Court to determine whether Plaintiff's testimony was fully credible. Craig, 76 F.3d at 589. Rather, the question for the Court is whether the ALJ applied the proper legal standard in assessing Plaintiff's credibility and whether the ALJ's decision is supported by substantial evidence. Id.

In assessing a claimant's statement of pain and other symptoms, the ALJ applies a two part process. Id. at 594; Hines, 453 F.3d at 565. First, the ALJ must assess whether there is a medically determinable physical impairment that could reasonably be expected to produce claimant's symptoms. 20 C.F.R. §404.1529(c)(1); Craig, 76 F.3d at 595; Hines, 453 F.3d at 565. If the ALJ finds that a claimant suffers such an impairment and that the impairment could reasonably be expected to produce the symptoms of pain of which claimant complains, the ALJ proceeds to step two. 20 C.F.R. § 404.1529(c)(1); Aytch v. Astrue, 686 F. Supp. 2d 590, 604 (E.D.N.C. 2010).

At the second step, the ALJ must evaluate the intensity and persistence of the pain, as well as the extent to which the claimant's symptoms and pain impact

his or her ability to work. 20 C.F.R. § 404.1529(c)(1); Craig, 76 F.3d at 595. "This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus the ALJ must consider conflicts between the claimant's statements and the rest of the evidence." Aytch, 686 F. Supp. 2d at 604. This evaluation takes into account all of the available evidence, including the claimant's medical history, the medical signs and laboratory findings, other objective medical evidence, and testimony or statements from claimant, physicians, or others regarding the pain and symptoms. 20 C.F.R. § 404.1529(c)(1) & (2); Craig, 76 F.3d at 595.

Here, the ALJ applied this two-step process in assessing Plaintiff's statements regarding her symptoms. (T. 18-23.) The ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the symptoms Plaintiff alleged. (T. 19-22.) The ALJ then found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (T. 22.)

The ALJ also provided detailed and specific reasons for why the ALJ found Plaintiff's testimony was not fully credible. (T. 22-23.) For example, the ALJ

found that the medical evidence in the record, including her treatment history, did not support the level of severity of impairment alleged and that epidural steroid injections provided significant relief to Plaintiff's pain. (T. 20-22.) Plaintiff also reported that she was able to walk without much difficulty after the injections. (T. 21, 859.) As the ALJ explained, "[c]ontrary to her testimony, the claimant's examinations routinely showed minimal findings and she was responsive to physical therapy and epidural steroid injections." (T. 22.) Finally, the ALJ also considered Plaintiff's daily activities, including that Plaintiff could drive, went grocery shopping, walked five times a week, and cared for her personal needs and a pet cat. (T. 22.) As the regulations make clear, Plaintiff's daily activities are relevant to the ALJ's determination as to the severity of Plaintiff's symptoms. 20 C.F.R. § 404.1529(c)(i).

Upon a review of the evidence in the record, the Court finds that the ALJ did not err in making a credibility determination, and this Court will not reweigh the evidence. While Plaintiff may disagree with the result that the ALJ reached based on the application of this two-step process, the record is clear that the ALJ applied the correct legal standard in assessing Plaintiff's credibility, and it is not the role of this Court to re-weigh the evidence and determine whether Plaintiff's testimony is credible or to substitute the judgment of this Court for that of the ALJ.

See Craig, 76 F.3d at 589. The Court finds that the ALJ's determination that Plaintiff's testimony was not fully credible was the result of the application of the proper legal standard and is supported by substantial evidence in the record. As such, remand is not required based on the alleged error of the ALJ to assess Plaintiff's credibility.

**C. The RFC Assessment**

Plaintiff contends that remand is required because the ALJ failed to conduct a function by function analysis in determining Plaintiff's RFC. As a threshold matter, there is no *per se* rule in this Circuit requiring remand when an ALJ does not perform an explicit function by function analysis. Mascio v. Colvin, 780 F3d 632, 636 (4th Cir. 2015). Rather, the question is whether the Court is able to conduct meaningful review of the ALJ's determination as to what functions a claimant can perform during a full workday. Id. at 636-7. Here, the ALJ complied with the requirements of Mascio and drafted an opinion that allows this Court to conduct meaningful review of the ALJ's RFC determination. The ALJ considered the relevant evidence in the record, including Plaintiffs treatment history, the opinion evidence and Plaintiffs' daily activities. (T. 18-23.) The ALJ found that Plaintiff was able to perform work at the medium exertional level with certain physical and environmental limitations. (T. 18, 21.) In addition, the ALJ

limited Plaintiff to simple, unskilled work in order to account for Plaintiff's pain. (T. 21.)

This is not a case like <u>Mascio</u> where the ALJ failed to consider or address conflicting assessments; instead, the ALJ explicitly considered and rejected this conflicting evidence. The ALJ also explained in the decision why Plaintiff did not warrant additional limitations in sufficient detail to allow this Court to conduct meaningful review and determine whether the decision of the ALJ was supported by substantial evidence in the record. Accordingly, the Court the Court finds that remand is not required based on the alleged failure of the ALJ to conduct a function by function analysis in determining Plaintiff's RFC. The Court **RECOMMENDS** that the District Court **GRANT** the Commissioner's Motion for Summary Judgment [# 13], **DENY** Plaintiff's Motion for Summary Judgment [# 9], and **AFFIRM** the decision of the Commissioner.

## VI. Conclusion

The Court **RECOMMENDS** that the District Court **GRANT** the Commissioner's Motion for Summary Judgment [# 13], **DENY** Plaintiff's Motion for Summary Judgment [# 9], and **AFFIRM** the decision of the Commissioner.

Signed: April 28, 2016

*Dennis L. Howell*

Dennis L. Howell
United States Magistrate Judge 

## **Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).