UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:15-cv-00073-MOC-DLH

| | |
|---|---|
| **LAURA E. WARE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | **ORDER** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on the Memorandum and Recommendation (#15) of the magistrate judge. In the Memorandum and Recommendation, the magistrate judge advised the parties of the right to file objections within 14 days, all in accordance with 28, United States Code, Section 636(b)(1)(c). Plaintiff timely filed Objections (#16) and the Commissioner timely filed a Response (#17), in which she does not address plaintiff's specific objections, but simply references her earlier brief. The Commissioner is advised – as she has been in prior decisions – that such method of responding to Objections does little to aid the court in the decision making process.

I.

The Federal Magistrates Act of 1979, as amended, provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Similarly, de novo review is not required by the statute

-1-

"when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the court has conducted a careful review of the magistrate judge's recommendation.

Plaintiff argues that the magistrate judge incorrectly held that (1) the ALJ properly gave little weight to the opinion of a treating physician, (2) the ALJ did not err in failing to conduct a function by function assessment of the contested exertional activities in this case, and (3) that the magistrate judge erred in finding that the ALJ properly discredited plaintiff's subjective complaints of pain. Objections (#16). The court will consider the each objection *seriatim*.

## II.

Plaintiff first argues that the magistrate judge incorrectly concluded that the ALJ gave proper weight to the opinion of a treating physician, Dr. Hume. Plaintiff contends that the reasons the ALJ gave for giving Dr. Hume's opinions little weight are not persuasive, to wit, that imaging studies did not show degenerative changes to the degree that would preclude all work and that she only provided plaintiff with conservative treatment. Plaintiff further argues that the magistrate judge incorrectly decided the issue based on his own incorrect finding that the medical opinion was "allowed to be discarded because it was largely based on only subjective complaints of pain." Objections (#16) at 2. The court disagrees with plaintiff's characterization of the magistrate judge's findings. While the magistrate judge did note that the ALJ explained that Dr. Hume's opinion was "largely based on Plaintiff's subjective reports of pain, " M&R (#15) at 10, the

magistrate judge went on to find that the ALJ's decision to give Dr. Hume's opinion little weight was explained by the ALJ, who found that such opinion was inconsistent with her own treatment records which contained minimal findings, that Dr. Hume did not regularly see plaintiff, and that she only prescribed conservative treatment. Indeed, the magistrate judge recited at length the clinical findings of Dr. Hume that provided substantial support to the ALJ's determination to give Dr. Hume's vocational conclusions little weight. See M&R (#15) at 11-12.

A treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). The opinion of a treating physician is only entitled to controlling weight if it is supported by "clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2).

> If a physician's opinion is not given controlling weight, then the "factors listed below" and in paragraphs (d)(3) through (5) used to determine the amount of weight to be given it are (1) the length of the treatment relationship and the frequency of examination ("the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion"); (2) the nature and extent of the treatment relationship; (3) supportability ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"); (4) consistency ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); and (5) specialization ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). Id. The regulation also makes clear, however, that the ultimate determination of disability is reserved for the Commissioner, and "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 416.927(e)(1).

Pittman v. Massanari 141 F.Supp.2d 601, *608 (W.D.N.C. 2001). Here, the court finds that the ALJ properly gave little weight to what were essentially vocational determinations by a primary care physician who had only seen plaintiff once before and who's conclusions, as noted by both

the ALJ and the magistrate judge, were antithetical to her own clinical findings. As the Court of Appeals for the Fourth Circuit held:

> Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.

Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (citation omitted). The court finds that the ALJ properly fulfilled his obligation of explaining why he gave the opinion of Dr. Hume little weight. Plaintiff's first objection is, therefore, overruled.[1]

### III.

Plaintiff next contends that the magistrate judge incorrectly concluded that the ALJ did not err in failing to conduct a function-by-function assessment of the contested exertional activities in this case.

In formulating RFC,[2] the "assessment must first identify the individual's functional

---

[1] The court notes that plaintiff also stated in her objection that "both the ALJ and the magistrate ignored the fact that Ms. Ware had already undergone a decompressive spinal surgery before she started treating with Dr. Hume." Objections (#16) at 2. The term "ignored" is not a fair characterization as plaintiff did not set forth as an assignment of error a failure to take into consideration plaintiff's prior surgery. Clearly, the ALJ recognized that plaintiff had undergone spinal surgery. In reviewing the medical evidence, the ALJ noted that Dr. Hume's examination revealed that plaintiff's "spine was without visible or palpable abnormality other than well-healed lumbar surgical scar and limited range of motion on forward spinal flexion." AR at 19.

Generally, failure by the Commissioner to consider an entire line of evidence falls well below the minimal level of articulation required by the Social Security Act. Diaz v. Chater, 55 F.3d 300, 307 (7th Cir.1995). However, an ALJ is not tasked with the "impossible burden of mentioning every piece of evidence" that may be placed into the Administrative Record. Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D.Ill.1991). Here, the ALJ clearly recognized that plaintiff had undergone spinal surgery in the past and gave consideration to the clinical findings of Dr. Hume related to plaintiff's spinal issues. As to the determination of the magistrate judge, his decision was guided by *plaintiff's* assignment of error, which was that the ALJ failed to properly evaluate the medical opinion of Dr. Hume.

[2] The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). RFC is a statement of the most a person can do in a work setting in light if his impairments, and any related symptoms, such as pain. 20 C.F.R. § 404.1545. RFC assesses an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, meaning eight hours a day for five days a week, or an equivalent work schedule. SSR 96-8P, 1996 WL 374184, at *1. In determining RFC, the ALJ must consider the

limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8P, 1996 WL 374184, at *1. The RFC assessment must address both the exertional and nonexertional capacities of the individual. Id. at *5. Exertional capacity "addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. Nonexertional capacity considers work-related limitations, including mental ones (e.g., understanding and remembering instructions and responding appropriately to supervision). Nonexertional capacity must be expressed in terms of work-related functions. Id. at *6. The "basic mental demands of … unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4.

Only after a function-by-function analysis has been completed may RFC "'be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" Mascio, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed. Reg. at 34, 475). Additionally, SSR 96-8p "explains that the [RFC] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. (internal quotation marks and citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96–8p, 1996 WL 374184, at *7.

---

functional limitations and restrictions resulting from the claimant's medically determinable impairments, including the impact of any related symptoms. Id.

Here, plaintiff takes issue with the ALJ's failure to conduct a function-by-function analysis and the magistrate judge's finding that Mascio does not mandate such a finding in every case. The Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) held that remand *may* be appropriate where "an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). The Circuit declined, however, to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," noting that such rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id.

Here, the ALJ did not conduct a function-by-function analysis. Plaintiff argues that medical evidence in the record indicates that she had difficulty walking, standing, and sitting for any length of time due to stenosis. Finding this case to be unlike the situation in Mascio, the magistrate judge determined as follows:

> This is not a case like Mascio where the ALJ failed to consider or address conflicting assessments; instead, the ALJ explicitly considered and rejected this conflicting evidence. The ALJ also explained in the decision why Plaintiff did not warrant additional limitations in sufficient detail to allow this Court to conduct meaningful review and determine whether the decision of the ALJ was supported by substantial evidence in the record. Accordingly, the Court the Court finds that remand is not required based on the alleged failure of the ALJ to conduct a function by function analysis in determining Plaintiff's RFC.

M&R (#15) at 17. In turn, the ALJ clearly discussed the conflicting medical evidence which plaintiff cites in her Objections, see AR at 19-21, and determined that:

> Although the objective diagnostics do not support the level of dysfunction as presented by the claimant, the undersigned has given consideration to the claimant's subjective assertions and has limited the claimant to activity consistent with a

medium level of exertion with postural and environmental limitations. Additionally, while the claimants back disorder is not disabling and does not preclude the performance of medium work, it is noted that she does have some pain resulting from her back impairment. Therefore, in consideration of the claimant's reported chronic pain and testimony regarding pain affecting her mood, the undersigned finds that the claimant would be limited to simple, unskilled work.

AR at 21. While plaintiff cites this court to its own recent decision in Franklin v. Colvin, 2016 WL 1724359 (W.D.N.C. April 29, 2016), as being supportive of remand for failure to conduct a function-by-function analysis, plaintiff fails to note that such remand was premised on the ALJ's failure to "mention any of these particular treatment notes in his decision." Id. In this case, before reaching the above-cited conclusion, the ALJ engaged in an extensive analysis of the relevant medical evidence, including the evidence that plaintiff points to as contra-indicative of the ALJ's determination. Unlike the administrative decision addressed in Franklin, the decision here indicates that the ALJ considered all of the relevant medical evidence. See Mascio, 780 F.3d at 636. As the magistrate judge determined, this particular administrative decision was sufficient to allow this court to engage in meaningful review. Plaintiff's second objection is overruled.

IV.

Finally, plaintiff objects to the magistrate judge's determination that the ALJ properly discredited plaintiff's subjective complaints of disabling pain, arguing that the magistrate judge failed to address plaintiff's arguments "for why the ALJ's rationale was not persuasive." Objections (#16) at 4. Plaintiff argues that the ALJ's rationale was not persuasive because the activities of daily living cited by the ALJ are not demonstrative of the exertional requirements of medium work.

The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v.

Sullivan, 899 F.2d 329 (4th Cir. 1990)(Hyatt III), which held that " [b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id., at 336. A two-step process for evaluating subjective complaint was developed by the Court of Appeals for the Fourth Circuit in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). This two-step process for evaluating subjective complaints corresponds with the Commissioners relevant rulings and regulations. See 20 C.F.R § 404.1529; SSR 96-7p.[3]

Step One requires an ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594.

Step Two requires that the ALJ next evaluate the alleged symptoms' intensity and persistence along with the extent to they limit the claimant's ability to engage in work. Id., at 594; see also 20 C.F.R. § 404. 1529(c); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. Craig, 76 F.3d at 595; 20 C.F.R. § 404. 1529(c); SSR 96-7p. The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other

---

[3] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. Id. Here, the ALJ clearly followed the two-step process.

First, in making the credibility assessment, the ALJ noted that examinations did not support the level of dysfunction alleged by plaintiff. AR at 21. For example, she had full muscle strength in her upper and lower extremities on all testing. AR at 20, 21, 622, 735, 850, 860. Despite her allegations of pain and inactivity, she had normal muscle tone and bulk. AR at 20, 622, 734. A gait abnormality was observed at only one time, in June 2013, when plaintiff reported a recent exacerbation of pain and a subsequent MRI showed "acute" nerve root irritation. AR at 851. However, shortly thereafter, plaintiff had a steroid injection and her gait was again described as normal. AR at 21, 859-860. At all other times, her gait was normal. AR at 19-21, 248, 263, 350, 622, 704, 849.

Second, the ALJ found plaintiff's allegations were not supported by her medication and treatment. AR at 22. The ALJ noted that there were significant gaps in plaintiff's treatment. AR at 22. Subsequent to her alleged onset of disability, plaintiff was seen at the VA for complaints of low back pain and underwent a course of physical therapy in October - December 2011. She was given a strengthening home exercise program with emphasis on neutral positioning. She did not complain of back pain again until May 10, 2012, when she was seen by Dr. Hume. AR at 19, 701. No further treatment for back pain is documented until January 30, 2013, when plaintiff returned to Dr. Hume. AR at 19, 685. Significantly, her only pain medication at this time was Advil, taken as needed several times a week. Plaintiff declined additional intervention for back pain and Dr.

Hume encouraged exercise and recommended that plaintiff follow up in 12 -13 months. AR at 19, 688-689). She returned to Dr. Hume in June 2013, following a sudden exacerbation of back pain the prior week. AR at 20, 837. She had still been using only Advil for pain relief, but declined narcotic pain medication and was prescribed a Medrol dosepack and a Toradol injection. AR at 20-21, 839, 842. Such clinical findings and lists of medications are "highly probative" of plaintiff's credibility. Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (Powell, J., concurring in part and concurring in the judgment) (stating that "an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility").

Plaintiff also takes issue with the ALJ's consideration of daily activities, contending that these are not instructive on the issue of whether she had the ability to work at the medium exertional level. Here, the ALJ considered that plaintiff drove a car (AR at 22, 34), went to the grocery store (AR at 22, 50), could care for her personal needs (AR at 22, 208), and care for a pet cat (AR at 22, 209). She reported that she walked five times a week (AR at 22, 848, 857). While these activities, in and of themselves, may not demonstrate that plaintiff's complaints of disabling pain are not fully credible or that she could perform medium work activity, the regulations do not require that each factor in the ALJ's credibility or RFC analysis, standing alone, be sufficient to find a claimant capable of performing at a specific exertional level or not fully credible. However, consideration of daily activities is required under current case law when considering the subjective complaints of pain, which is only one piece of all the evidence that must be considered in making a disability determination. In considering an almost identical method of evaluating pain in

Mickles, supra, the late Honorable K. K. Hall, Circuit Judge, in announcing and concurring in the judgment of the Court of Appeals for the Fourth Circuit, held:

> This refreshing mode of analysis is precisely what I believe our cases have been striving for. The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.

Id., at 927. In accordance with Mickles, the ALJ properly discredited plaintiff's subjective complaints of pain, substantial evidence supports the ALJ's determinations, and plaintiff's Objection is overruled.

## ORDER

**IT IS, THEREFORE, ORDERED** that the plaintiff's Objections (#16) are **OVERRULED**, the Memorandum and Recommendation (#15) is **AFFIRMED,** plaintiff's Motion for Summary Judgment (#9) is **DENIED**, the Commissioner's Motion for Summary Judgment (#13) is **GRANTED,** the Commissioner's decision is **AFFIRMED**, and this action is **DISMISSED**.

Signed: June 8, 2016

Max O. Cogburn Jr.
United States District Judge